IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| KIM UPSHAW | : | |
| | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 11-7574 |
| JANSSEN RESEARCH & | : | |
| DEVELOPMENT, LLC | : | |

SURRICK, J.                                                         MARCH  26 , 2014

## MEMORANDUM

Presently before the Court is Plaintiff's Motion to Compel Discovery and Strike

Objections of Defendant Janssen Research & Development, LLC (ECF No. 19) and Defendant's

Cross-Motion for the Entry of a Protective Order (ECF No. 20).  For the following reasons,

Plaintiff's Motion will be granted in part and denied in part, and Defendant's Motion will be

granted.

## I.        BACKGROUND

Plaintiff Kim Upshaw brought this race, gender, retaliation, and disability discrimination

action against Defendant Janssen Research & Development, LLC ("Janssen").  Plaintiff is an

African American female.  She was hired by Janssen in July 2006.  (Am. Compl. ¶¶ 10-11, ECF

No. 16.)  In March 2008, Plaintiff was promoted to Privacy Director, Pharmaceuticals in

Janssen's Pharmaceuticals Group Health Care Compliance (PGHCC).  (*Id*. at ¶ 12.)  She

remained in this position until she was constructively discharged and resigned in November

2010.  (*Id*. at ¶ 13.)  As Privacy Director, Plaintiff reported directly to Kris Curry (Caucasian

female) and became a member of Curry's Operations Leadership Team.  (*Id*. at ¶¶ 15, 16, 18.)

Also on Curry's Operations Leadership Team were four other directors:  Deborah Lake

(Caucasian female); Christopher Matteson (Caucasian male); Anthony Brennan (Caucasian male); and Ed Benson (African American male). (*Id*. at ¶¶ 18-22.)[1] The Operations Leadership Team met annually in October, in what were called calibration meetings, to discuss performance review ratings of their respective direct reports. (Am. Compl. ¶ 23.) Ratings ranged from one, the lowest rating, to ten, the highest rating. (*Id*. at ¶ 25.) The Operations Leadership Team also met annually in June, in what were called succession planning meetings, to conduct mid-year reviews and assess those direct reports who were in line for promotion. (*Id*. at ¶ 24.) Direct reports included senior analysts and managers. (*Id*. at ¶¶ 23-24.) Plaintiff had two direct reports: Linda Bell-Powell (African American female) and Tom DeDeo. (*Id*. at ¶ 24.)

At a calibration meeting held on November 2, 2009, Plaintiff challenged the ratings of three managers:  Michelle Kingsberry (African American female), Linda Bell-Powell, and Elizabeth Snyder (Caucasian female). (*Id*. at ¶¶ 25-30; Pl.'s Mot. 7, ECF No. 19.) Plaintiff challenged the fact that Snyder, the Caucasian female manager, received a rating of four, when Kingsberry and Bell-Powell, the African-American managers, received ratings of three, despite the fact that it was determined by the Operations Leadership Team that all three managers were not capable of performing their job duties. (Am. Compl. ¶¶ 27-29; Pl.'s Mot. 7.) At the meeting, Curry stated that she did not appreciate the fact that Kingsberry had reported to Human Resources that Curry discriminated against her. (Am. Compl. ¶ 30; Pl.'s Mot. 7.) At the conclusion of the meeting, the Operations Leadership Team decided that Snyder, Kingsberry, and Daniel Greco (Caucasian male) would receive level three ratings and warning letters. (Am. Compl. ¶ 31; Pl.'s Mot. 7.) Plaintiff later learned at a June 1, 2010 succession planning meeting

---

[1] Each of the five directors under PGHCC supervised a different work unit and had different direct reports. (Def.'s Br. 3, ECF No. 20-1.)

that despite all three of these managers receiving level three ratings, only Kingsberry was placed on calibrations performance steps.  (Am. Compl. ¶ 32; Pl.'s Mot. 7-8.)

Plaintiff alleges that, as a result of her challenging the ratings of these managers, she suffered discrimination and retaliation on account of her race and gender.  (Am. Compl. ¶ 33; Pl.'s Mot. 8.)  Specifically, Plaintiff alleges that Defendant (1) failed to acknowledge her team's accomplishments at the December 7, 2009 all-employees quarterly meeting, while mentioning the accomplishments of other Director's teams; (2) failed to provide her sufficient staffing, despite numerous requests for additional staffing, while providing sufficient staffing to two other director's teams; (3) reprimanded Plaintiff in February 2010 in an email; (4) failed to provide reasonable accommodations to Plaintiff after Plaintiff notified Curry that she had become overwhelmed and stressed; (5) failed to provide support to Plaintiff's privacy team while providing support to the other teams within the PGHCC division; (6) permitted other directors to "map" or be automatically placed into a position in the reorganized company;[2] and (7) threatened Plaintiff with demotion to manager level if she did not apply for one of the new privacy director positions, while other directors on the Operations Leadership Team did not have to apply for these new director positions.  (Am. Compl. ¶ 33.)

---

[2] Defendant states that, beginning in 2010, the company underwent a reorganization where the health care compliance and privacy functions of the various operating companies under Defendant's parent company, Johnson & Johnson, were moved from the operating companies into a new corporate organization, the "Johnson & Johnson Office of Health Care Compliance and Privacy ("OHCCP")."  Positions from the operating companies were compared with the proposed positions in OHCCP.  "Where there was at least a 70% roles and responsibilities match between the operating company position and the new OHCCP position, the operating company 'incumbent' was 'mapped' or automatically received the position with OHCCP."  (Def.'s Br. 4 n.1.)  Defendant's privacy director position, along with other director positions, did not meet the 70% threshold and, as a result, Plaintiff did not map or automatically receive the director position at OHCCP.  Plaintiff was encouraged to and did apply for the director position in the organization.  (*Id*.)  Plaintiff was offered the position but rejected the offer and resigned.  (*Id*.)

Plaintiff filed an Amended Complaint on April 30, 2012, asserting the following claims: racial and gender discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq*., and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. § 951, *et seq*., and 42 U.S.C. § 1981 (Counts I & II);  racial and gender-based hostile work environment under Title VII, the PHRA, and Section 1981 (Counts III & IV); retaliation under Title VII and the PHRA (Count V); and disability discrimination under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 et seq. (Count VI).

On July 5, 2012, Plaintiff filed the instant Motion to Compel Discovery and Strike Objections.  (Pl.'s Mot.)  Defendant filed a Response in opposition to the Motion to Compel (ECF No. 20), a Cross-Motion for Entry of a Protective Order (Def.'s Mot. Prot., ECF No. 20), and a Memorandum in support of both its Response and Motion for Protective Order (Def.'s Br.).  Defendant also filed a Certification of Elena Chkolnikova (Chkolnikova Cert, ECF No. 20-2), which attaches various pleadings and correspondence related to this discovery dispute. Plaintiff filed a Reply in further support of her Motion to Compel (Pl.'s Reply, ECF No. 22), and a Response to Defendant's Motion to Compel.  (Pl.'s Resp., ECF No. 24).

## II.    LEGAL STANDARD

"It is well established that the scope and conduct of discovery are within the sound discretion of the trial court."  *Marroquin-Manriquez v. I.N.S.*, 699 F.2d 129, 134 (3d Cir. 1983). Pursuant to Federal Rule of Civil Procedure 26(b)(1) a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  The information sought in discovery need not be admissible at trial, as long as it "appears reasonably calculated to lead to the discovery of admissible evidence."  *Id*.  Relevance is generally "construed broadly to encompass any matter that could bear on, or that reasonably

could lead to other matter that could bear on, any issue that is or may be in the case."
*Oppenheimer Funds v. Sanders*, 437 U.S. 340, 351 (1978).

Pursuant to Rule 37, a party who has received evasive or incomplete answers to discovery requests may move for an order compelling discovery.  *See* Fed. R. Civ. P. 37(a)(1), (4).  The moving party bears the initial burden of showing that the requested discovery is relevant.  *Morrison v. Phila. Hous. Auth.*, 203 F.R.D. 195, 196 (E.D. Pa. 2001).  The burden then shifts to the party opposing discovery to articulate why discovery should be withheld.  *Id*.  A claim that the "discovery sought is overly broad, burdensome, oppressive, vague or irrelevant is 'not adequate to voice a successful objection.'" *Northern v. City of Phila.*, No. 98-6517, 2000 U.S. Dist. LEXIS 4278, at *5 (E.D. Pa. Apr. 4, 2000) (quoting *Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982)).

While generally liberal, permissible discovery is not without limitations.  Discovery should not serve as a fishing expedition.  *Provine v. Ambulatory Health Servs.*, No. 13-334, 2014 U.S. Dist. LEXIS 702, at *4-5 (M.D. Pa. Jan. 6, 2014); s*ee also Claude P. Bamberger Int'l v. Rohm & Haas Co.*, No. 96-1041, 1998 U.S. Dist. LEXIS 11141, at *5-6 (D.N.J. Mar. 31, 1998) ("While the standard of relevancy is a liberal one, it is not so liberal as to allow a party to roam in shadow zones of relevancy and to explore matter which does not appear germane merely on the theory that it might become so." (quoting *In re Fontaine*, 402 F. Supp. 1219, 1221 (E.D.N.Y. 1975))).  For Title VII plaintiffs seeking information regarding other employees, they must allege something more than the fact that they shared a position in common with them.  *Kanaji v. Phila. Child Guidance Ctr. of Children's Hosp.*, No. 00-937, 2001 U.S. Dist. LEXIS 8670, at *9-10 (E.D. Pa. June 20, 2001).  Rather, discovery of personnel files must be limited to documents related to the plaintiff's claims in light of the confidential nature of this information.  *Apollo v.*

*Pa. Convention Ctr. Auth.*, No. 11-6684, 2013 U.S. Dist. LEXIS 180032, at *5 (E.D. Pa. Dec. 23, 2013).

## III.   DISCUSSION

Plaintiff seeks information about various individuals employed or formerly employed by Defendant.  Specifically, Plaintiff seeks personnel files, annual performance reviews and ratings, job duties, peer reviews, mid-year performance reviews and ratings, warning letters, Performance Improvement Plans (PIPs), in addition to electronic discovery and documents concerning, referring, or relating to Curry's Operations Leadership Team, for the period of March 2008 through the present.  (Pl.'s Mot. Compel 2.)  Defendant contends that Plaintiff's document requests are "patently overbroad, over-reaching, and intrusive," that the scope of the requests exceeds what is reasonably calculated to lead to the discovery of admissible evidence, and that the information Plaintiff seeks would invade the privacy interests of the former and current employees.  (Def.'s Br. 2.)  Defendant also argues that since Plaintiff has not alleged that Defendant engaged in a widespread pattern or practice of discrimination on the basis of race, gender, or disability, the personnel documents related to other employees and whether such employees were disciplined, is irrelevant.[3]

---

[3] Defendant also contends that Plaintiff's Motion should be denied because she has failed to comply with Local Rule 26.1(f), which states that "[n]o motion or other application pursuant to the Federal Rules of Civil Procedure governing discovery . . . shall be made unless it contains a certification of counsel that the parties, after reasonable effort, have been unable to resolve the dispute."  E.D. Pa. R. Civ. P. 26.1(f).  Plaintiff's counsel attached a certification to Plaintiff's Motion indicating that, despite counsel's good faith efforts to confer with counsel for Defendant and obtain the requested discovery, the dispute has not been resolved.  (Pl.'s Mot. Ex. A.)  In addition, Defendants submitted the Certification of Elena Chkolnikova, which attaches multiple correspondences between the parties concerning these discovery requests.  We are satisfied that efforts have been made by both parties to resolve this discovery dispute.

A.      **Personnel Files**

Plaintiff requests personnel files for 13 current and former employees of Defendant:

seven directors, four of whom were on Curry's Operations Leadership Team with Plaintiff, and

six managers, two of whom were Plaintiff's direct reports.  Specifically, Document Request

Number 9 seeks the following documents:

> Any and all documents concerning, referring and/or relating to Elizabeth Snyder wherever located including, without limitation, on work or home based computers, electronic devices (smart phones, tablets, cloud storage, etc.) and maintained by or on behalf of Defendant, Kris Curry, Robin Seiz, Janet K. LeDoux, Dorothy Clark, Jean Messina, Anthony Brennan, Christopher Matteson, Deborah Lake, Ed Benson, and Defendant's agents and representatives for the period from March 2008 to the present.

> Documents should include, without limitation, emails, handwritten notes, memoranda, statements (sworn and unsworn), text messages, personnel files, annual performance reviews and ratings, job duties, peer reviews, mid-year performance reviews and ratings, warning letters, Performance Improvement Plans (PIPS) and the like.

(Request No. 9, Chkolnikova Cert. Ex. A.)

Document Requests Numbers 10-12 and 15-21 are nearly identical to Request Number 9,

except that a different employee is named in the place of Elizabeth Snyder.[4]  The four directors

that were on Curry's Operations Leadership Team with Plaintiff are Anthony Brennan,

Christopher Matteson, Ed Benson, and Deborah Lake.  The three other directors for which

Plaintiff requests personnel files—Sue Seferien (white female), Tim Grimes (white male), and

Chris Firriolo (white male)—also directly reported to Curry and became a part of Curry's

---

[4] Those Document Requests seek documents relating to Michelle Kingsberry (Request No. 10), Daniel Greco (Request No. 11), Erin Parsons (Request No. 12), Anthony Brennan (Request No. 15), Christopher Matteson (Request No. 16), Ed Benson (Request No. 17), Deborah Lake (Request No. 18), Tim Grimes (Request No. 19), Sue Seferian (Request No. 20), and Christopher Firriolo (Request No. 21).  Request Number 14 requests the same types of documents for "Plaintiff's direct reports at the senior analyst and manager levels, including, but not limited to, Linda-Bell Powell and Tom DeDeo."  (Request No. 14.)

subsequent leadership team.[5]  Plaintiff also requests the personnel files of six managers:
Elizabeth Snyder; Michelle Kingsberry; Dan Greco; Erin Parsons; Linda Bell-Powell; and Tom
DeDeo.   Bell-Powell and DeDeo reported directly to Plaintiff.

　　　　Plaintiff argues that the personnel files are relevant to support her disparate treatment,
hostile work environment, and retaliation claims.  With respect to the disparate treatment claim,
Plaintiff claims that the employees are similarly situated because they all reported to Curry.  The
directors all reported to Curry and were a part of the Operations Leadership Team.  According to
Plaintiff, the managers are similarly situated because even though they directly reported to
individual directors, they, like Plaintiff, "ultimately reported" to Curry.  (Pl.'s Reply 5.)  With
respect to the retaliation claim, Plaintiff contends that, because her challenging the managers'
ratings constituted "opposition" protected activity, the personnel files of the three managers
whose ratings Plaintiff challenged—Snyder, Kingsberry, and Bell-Powell—are relevant and
discoverable.  Finally, with respect to the hostile work environment claim, Plaintiff argues that
the personnel files of Benson and Kingsberry are relevant because they were also subjected to
discrimination, and that the files of any director or manager who was mapped or automatically
promoted to a position in the reorganized company are relevant to show that Plaintiff was not
treated as favorably.

　　　　In order to prove a disparate treatment claim under Title VII, Plaintiff must show (1) an
"inference of discrimination," (2) that she is a member of a protected class, (3) that she is

---

[5] There are four other individuals listed in Document Request Numbers 9-12 and 14-21:
Robin Seiz; Janet K. LeDoux; Dorothy Clark; and Jean Messina.  These employees are all a part
of Defendant's human resources department.  Plaintiff does not request their personnel files, but
rather information related to the thirteen other employees that are maintained by or on behalf of
these human resources employees.  Plaintiff claims that these individuals "have relevant
documents . . . that are relevant to her claims, pretext and burdens of proof and production."
(Pl.'s Mot. 8.)

qualified for the position, and (4) that she suffered an adverse employment action.  *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008).  With regard to the first requirement, Plaintiff can satisfy her burden by demonstrating that she was treated less favorably than a similarly situated employee outside of the protected class.  *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410-11 (3d Cir. 1999).  To be similarly situated for purposes of Title VII, employees must be similarly situated in "all relevant aspects" of their employment.  *Houston v. Easton Area Sch. Dist.*, 355 F. App'x 651, 654 (3d Cir. 2009).  "A determination of whether employees are similarly situated takes into account factors such as the employees' job responsibilities, the supervisors and decision-makers, and the nature of the misconduct engaged in."  *Wilcher v. Postmaster Gen.*, 441 F. App'x 879, 882 (3d Cir. 2011); *see also Provine*, 2014 U.S. Dist. LEXIS 702, at *6-7 ("Similarly situated employees are those who have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.") (internal quotation marks omitted).  "Ordinarily, discovery of personnel records is permissible only for parties or similarly situated employees and the court has tailored the disclosure to the relevant issues."  *Chiaradonna v. Rosemont College*, No. 06-1015, 2006 U.S. Dist. LEXIS 90755, at *6 (E.D. Pa. Dec. 11, 2006).

The seven directors for which personnel files are requested by Plaintiff share a supervisor—Kris Curry—albeit, some of them were under the supervision of Curry at different times than Plaintiff.  These directors likely also have similar job responsibilities as they are all supervisors for managers or senior analysts in the company's pharmaceutical health care compliance group.  The six managers for which personnel files are requested by Plaintiff are supervised by different directors, but ultimately report to Curry.  Although it appears that the

directors and managers dealt with the same supervisor, it is not clear whether any of the employees, except for one—Michelle Kingsberry—were engaged in similar misconduct. Plaintiff alleges that as a result of her challenging the ratings of certain managers at the November 9, 2009 calibration meeting, she was subjected to discrimination. Plaintiff does not allege that she was the subject of any disciplinary actions or received negative performance ratings. In order to be similarly situated, a comparison employee must have also engaged in similar conduct as Plaintiff. With the exception of Michelle Kingsberry, who, like Plaintiff, engaged in "opposition" protected activity when she made a charge of discrimination against Curry, none of the other directors or managers are alleged to have engaged in similar opposition protected activity. Plaintiff has not met her burden in demonstrating that the directors and managers, except for Kingsberry, are similarly situated employees for purposes of Title VII. Accordingly, Plaintiff has failed to show the relevance of the personnel files for all employees except for Kingsberry for purposes of her disparate treatment claims. *See Northern*, 2000 U.S. Dist. LEXIS 4278, at *10-11 (holding that plaintiff was only entitled to the discovery of personnel files of employees who were charged with similar misconduct of violating department directives or specifications); *Kanaji*, 2001 U.S. Dist. LEXIS 8670, at *10 (compelling production of personnel files of only those employees who were alleged to engage in similar conduct, and only the portions of those files reflecting the conduct and discipline imposed); *Getz v. Pennsylvania*, No. 97-7541, 1998 U.S. Dist. LEXIS 20262, at *5-7 (E.D. Pa. Dec. 18, 1998) (denying the plaintiff's motion to compel production of personnel files where the plaintiff failed to allege that that the individuals suffered similar treatment or show that the files were otherwise relevant); *see also Provine*, 2014 U.S. Dist. LEXIS 702, at *11 (noting that the plaintiff is not entitled to the files of every employee that merely worked in the same position or under the same

supervisor as her because this would "cause discovery . . . to become the type of fishing expedition against which the courts caution").

Defendant will be required to produce the personnel file of Kingsberry. However, Plaintiff is not entitled to the entire file, but only to those portions that are relevant to her claims. "Discovery of personnel files must be limited to documents relevant to the plaintiff's claims because of the confidential information within these files." *Apollo*, 2013 U.S. Dist. LEXIS 180032, at *5 (limiting disclosure of personnel files of similarly situated employees to information relating to the plaintiff's claims). Thus, Defendant shall produce the contents of Kingsberry's personnel file that relate to Kingsberry's charge of discrimination, any promotions or disciplinary actions she received, any accomplishments she was recognized for, and any staffing requests she made. If Plaintiff learns that other managers or directors engaged in conduct similar to the conduct on which she bases her claims, she may seek the relevant portions of those employees' personnel files.

Plaintiff also contends that the personnel files of the three managers whose ratings she challenged at the November 9 calibration meeting are relevant to support the claim that Defendant retaliated against her after she engaged in this "opposition" protected activity. Plaintiff challenged the ratings of Kingsberry, Linda Bell-Powell, and Elizabeth Snyder.[6] The elements of a retaliation claim under Title VII are: "(1) the employee engaged in a protected employee activity; (2) the employer took an adverse employment action after or contemporaneous with the employee's protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279 (3d Cir. 2000). Plaintiff focuses her argument on convincing the Court

_____

[6] Defendant is already required to produce those portions of Kingsberry's personnel file that relate to Plaintiff's claims. *See* supra.

that challenging the managers' ratings constituted opposition protected activity.  Whether or not

this is true is of no consequence.  Plaintiff has failed to show how information contained in the

managers' personnel files could in any way relate to Defendant's treatment of Plaintiff after

Plaintiff challenged the ratings of these individuals.  The focus of a retaliation claim is not on the

individual managers' performance at the company, but rather on how Plaintiff was treated after

engaging in protected employee activity.  We reject Plaintiff's argument that the personnel files

are relevant to support her retaliation claim.

Finally, Plaintiff argues that the personnel files of the seven directors and six managers

are relevant and discoverable to support her hostile work environment claim.  (Pl.'s Reply 5-6.)

Under this theory, "Title VII prohibits sexual harassment that is 'sufficiently severe or pervasive

to alter the conditions of [the plaintiff's] employment and create an abusive working

environment.'"  *Mandel v. M&Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013) (quoting

*Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)).  To prove a hostile work

environment, Plaintiff must establish five elements:  (1) the discrimination was intentional and

because of Plaintiff's sex or race; (2) the discrimination against her was severe or pervasive; (3)

the discrimination had a subjective detrimental effect on her; (4) the discrimination was

objectively detrimental; and (5) respondeat superior liability.  *Mandel*, 706 F.3d at 167 (citing

*Jensen v. Potter*, 435 F.3d 444, 449 (3d Cir. 2006)).  Incidents of discrimination involving other

employees may be relevant in establishing a hostile work environment claim.  *Velez v. QVC,

Inc.*, 227 F. Supp. 2d 384, 410 (E.D. Pa. 2002).

We agree with Plaintiff that the personnel files of Benson and Kingsberry may be

relevant as evidence of other incidents of discrimination.  As stated above, Kingsberry made a

claim of discrimination against Curry to Human Resources and was allegedly subjected to

discrimination as a result. Plaintiff alleges that Benson was also subjected to intentional discrimination similar to Plaintiff. Accordingly, Defendant will be required to produce the portions of Benson's personnel file that relate to Plaintiff's claims. Plaintiff also argues that the personnel files of any director or manager who was mapped or automatically promoted to a position in the reorganized company is relevant to her hostile work environment claim because it shows that plaintiff was not treated favorably. We disagree. Unlike claims of disparate treatment, hostile work environment claims do not require a plaintiff to show that similarly situated employees were treated less favorably. Plaintiff has failed to offer any reason why the confidential information contained in employees' personnel files would aid in demonstrating that she was subjected to an abusive working environment. Plaintiff improperly attempts to conflate the disparate treatment and hostile work environment claims. Plaintiff's argument is without merit.

Accordingly, Defendant shall produce portions of the personnel files for Benson and Kingsberry that relate to Plaintiff's claims. Defendant is not required to produce the personnel files of any other director or manager.

### B. Operations Leadership Team Documents

In addition to personnel files, Plaintiff also requests documents relating to Curry's Operations Leadership Team. Specifically, Document Request Number 13 seeks the following documents:

> Any and all documents concerning, referring and/or relating to Kris Curry's Operations Leadership Team for the periods from March 2008 to the present including all calibration and succession planning meetings with special attention paid to the Calibration meeting on or about November 2, 2009 and succession planning meeting on or about June 1, 2010, wherever located including, but not limited to, on work or home based computers, electronic devises (smart phones, tablets, cloud storage, etc.) and maintained by or on behalf of Defendant, Kris Curry, Robin Seiz, Janet J. LeDoux, Dorothy Clark, Jean Messina, Anthony

Brennan, Christopher Matteson, Deborah Lake, Ed Benson, Tim Grimes, Sue Seferian, and Defendant's agents and representatives.

Documents should include, without limitation, emails, handwritten notes, memoranda, statements (sworn and unsworn), text messages, and the like from all attendees to each such meetings.

(Request No. 13, Chkolnikova Cert. Ex. A)

Defendant objects to this request on the basis that it is overly broad, burdensome, not limited in time and scope, and that it seeks confidential personnel information that would invade the privacy interests of individuals not parties to this litigation. (Pl.'s Mot. 6.) Despite these objections, Defendant agrees to produce documents that relate to the November 2, 2009 calibration meeting and the June 1, 2010 succession planning meeting. (*Id.*) Plaintiff requests documents for the broader time period of March 2008 through the present. In setting time limits and determining scope, courts must balance the relevance of the information sought by the plaintiff against the burden on the defendant. *Miller v. Hygrade Food Prods. Corp.*, 89 F. Supp. 2d 643, 657 (E.D. Pa. 2000). Plaintiff has failed to articulate any reason, and we see none, why documents relating to meetings other than the November 2, 2009 calibration meeting and the June 1, 2010 succession planning meeting are relevant or support her disparate treatment, retaliation, or hostile work environment claims. Accordingly, Defendant shall produce only those documents that relate to the November 2, 2009 calibration meeting and the June 1, 2010 succession planning meeting.

## C.    Protective Order

Defendant requests that, if the Court grants any of Plaintiff's requests for discovery, Defendant be permitted to disclose the information pursuant to a protective order. Generally, a party wishing to obtain a confidentiality order over discovery materials must demonstrate that "good cause" exists for the order of protection. *Miles v. Boeing Co.*, 154 F.R.D. 112, 114 (E.D.

Pa. 1994) (citing *Cipollone v. Ligget Gp., Inc.*, 785 F.2d 1108, 1122 (3d Cir. 1986)).  Although information contained in employee files may be discoverable in certain situations, "personnel files are confidential and discovery should be limited."  *Id*. at 115; *see also Morton v. F.H. Paschen, Inc*., No. 96-7179, 1998 U.S. Dist. LEXIS 228, at * 7 (E.D. Pa. Jan. 14, 1998) (finding that the privacy interests in personnel files weighs in favor of a confidentiality agreement).

Plaintiff recognizes that the discovery of personnel files warrants limitations and protections.  (Pl.'s Resp. 2.)  Plaintiff nevertheless objects to the protective order submitted by Defendants on the basis that it is "extensive" and "expansive."  (*Id*.)  However, Plaintiff fails to identify what part or parts of Defendant's proposed order that she finds objectionable.  We see no reason why the proposed order does not both adequately protect Plaintiff's rights and maintain the privacy interests of the non-party current and former employees.  Accordingly, we find it appropriate that the portions of the personnel files for Kingsberry and Benson be produced pursuant to the protective order submitted by Defendant.

**IV.    CONCLUSION**

For the foregoing reasons, Plaintiff's Motion to Compel Discovery and Strike Objections of Defendant Janssen Research & Development, LLC will be granted in part and denied in part, and Defendant's Cross-Motion for the Entry of a Protective Order will be granted.

An appropriate Order follows.

**BY THE COURT:**

_____

**R. BARCLAY SURRICK,   J.**